Good morning, Your Honors. May it please the Court, my name is Tim Anderson here for the Appellant, Prince Bell. This is a criminal case, so we get to have a little different conversation than what Your Honors have heard throughout the morning. I've raised two issues here before the Court that I will address. First, dealing with show-up identifications of a defendant, and then dealing with the probable cause to arrest my client. Although I do think the probable cause issue has very strong merit, the show-up issues I think have more legal meaning relevant to these proceedings and to future proceedings. So I'm going to The Supreme said show-up should be widely condemned, and that's the theme of my argument. Show-up identifications should be widely condemned. They're inherently suggestive. In fact, I can't imagine any scenario where a show-up identification is not overly suggestive. If Your Honors will allow me just a brief... So all show-up identifications are inherently suggestive and no good. No show-up identifications, in your view, at all. On the two-pronged test for overly suggestive, I can't imagine a fact pattern where a defendant has his handcuffs behind his wrist, surrounded by police, and a victim is asked to identify that person. That could not be overly suggestive. Show-ups generally occur moments after a crime is committed. And this was 42 minutes after. Forty-two minutes, correct. So the robbery occurred at a Shell station. The police responded very quickly. The victim was in police presence within minutes of the robbery, and within about 20 minutes of the robbery, hears on the police radio on one of the officers that they have the suspect in custody, and then is told by police that we're going to bring you to the suspect to identify him. How that can't be overly suggestive is beyond me. Now, keep this in mind when it comes to overly suggestive. I believe the District Court, in its opinion, stipulated that this was an overly suggestive, or even found that this was overly suggestive. You have, imagine your honors are walking down the street, and a man in a blue suit comes at gunpoint and robs you, and then runs off. Now, you don't get a look at the man in the blue coat's face, but you see that his hands are white, so you probably know he's a white guy. You get kind of a silhouette as he's running away. But all you know is he is wearing a blue suit. Minutes later, police come and deal with you, and then 40 minutes later, you find me being pulled out of a police car with my hands behind my back. How can your honors not inherently be swayed by the fact that the police have the guy that arrested me? That's what makes it overly suggestive. That's not this case, though. It wasn't just a man in some sort of nondescript blue suit. This victim at the convenience store was really focused on the offender from the waist down because he had a scarf on his face, and gave a very detailed description of what he was wearing down to the red piping on the clothing and the mud on the shoes. So that's really not at all comparable. Except that in the identification of Mr. Bell, he was not wearing the upper clothes. He had black pants and black shoes. And the victim in a police car identifies the mud on the way. That's from the bench to the door. That's the identification of the defendant. That is inherently suggestive. He could not identify the clothing. The upper clothing was different. You say it was inherently suggestive. They took him back there and the fellow said that's him or whatever it was. Then you played guilty. Well, Judge, there's a reason for that. Well, let me finish. You played guilty. So they never did call the fellow at the trial. We did call him at the suppression hearing. But you didn't call him at the trial. Yes, sir. And so the jury didn't get an opportunity to hear from the key witness. If he had called him at the trial and he had said that's the fellow, the government would have stopped. It wouldn't have used this evidence.  It wouldn't need this evidence. So the person that would be trying to use the evidence would be used to say that it was done to impeach, that the courtroom identification was somehow improperly secured by this show-up. Yes, sir. So the government wouldn't have needed the evidence that you say you're suppressing or you wanted to suppress in order to prosecute him, right? But what were you really wanting done? Judge, I don't know how you get a... I'm not sure. Maybe you do. I'm not sure you got a conditional plea situation here. Because what you want suppressed, the government wouldn't have used. Absolutely, they were going to use it. Well, how would they... Why would they use the identification down the street? The identification they want is before the jury. They want the witness on the stand to say that's the fellow that robbed me. No further questions, Your Honor. Well, Judge... And then the jury could decide whether the witness was right or wrong. And whether the jury would be entitled to impeach him, or support him, or whatever it was. It would be entirely up to the defense, not the government. They wouldn't be entitled to put in the prior consistent statement. That wouldn't be admissible in this situation. Judge, the government's intent was to have the witness identify the clothing of the perpetrator. And that's what the show-up identified. The government wouldn't need any of that at the trial. All they need is to have the witness say that's the fellow that robbed me. No further questions. That's all they need. Right. That's all they need. So if you go into trial, you know, you may have won. But anyway, but you plead guilty, and you say this is a contentional plea. I just didn't see what you were suppressing. Judge, the... To me, like the evidence you were suppressing would be evidence that you might have been able to use at the trial to cross-examine. Judge, we saw that... In which case, you would have waived probably the contention that it should have been suppressed. Right. Judge, we saw that the victim at the suppression hearing saying that those clothes that the defendant was wearing was the person who was robbing the store. That was the identification. But why would that have come in at the trial? Because you're trying to suppress it from what? I mean, what's going to come in at the trial is whether the fellow that is sitting at the counsel table, the defendant, is the one that committed the robbery. And if the witness... But the witness... Then the government's entitled to say no further questions. The witness couldn't identify the defendant by his face or his appearance. Well, the government, they'd say, well, you don't know that. We do know that. I asked the... We don't know that. You found that out at the trial. I asked that question during the suppression of the witness. You found that out at the trial, though. I mean, the suppression evidence doesn't go into trial either. Well, Judge, I can ask a witness under oath if he can identify the defendant at the suppression hearing, and he said he could not. The government's intent was still to bring forward that evidence at trial. And we know by the studies that if there's an eyewitness testimony, even in a situation where the eyewitness was blind, that 68% of the time, juries are going to convict. My client knew that the witness was going to identify him because of the clothing he was wearing only at trial. We knew that. We heard that at the suppression. I mean, I suppose that the witness could have changed the story at trial, but that would be inconsistent and unlikely. We knew what the witness was going to say. We knew what the victim was going to say. And the victim... Were you trying to dismiss the indictment by saying that the indictment was based on a constitutionally imperfect identification that precluded a trial? Judge, if the victim were to come... Now, that might be something that you could appeal. Judge, if the victim were to come to court and say, the man who robbed me was wearing black pants and had mud on his shoes. And that's all he said. And then the government came in with evidence that my client was wearing black pants with mud on his shoes. That's admissible. But what we're talking about... But that might get you a dismissal of the warrant or something. But the grand jury would still be entitled to indict. And the government would be entitled to go to trial and to put the witness on the witness stand and say, do you see the fellow in the courtroom that I can say that's the end of our examination. Your Honor, I'm sideways with you on this because the witness couldn't identify the defendant. That was not... We don't know whether he could identify the defendant until he goes to trial. We knew it, Judge. But they ran. They chased him all over town for seven blocks. And he shed his clothes. And there was a lot of stuff independent of this going back there. But he threw the money And they had all these circumstances of the chase that certainly indicated that it was him. He took off running as soon as he saw the policeman. Judge... There was a lot of stuff independent of the going back there to that show. I just couldn't... I just started musing on that, whether there was really a proper situation here for a conditional plea. Judge... It's not the normal situation. I think I need to flip forward and talk about that, Judge. The court is wrapped up with the fact that the defendant pled guilty. The court's following its decision in gray. Well, you pled guilty and you're trying to appeal on a conditional plea and say the show-up was constitutionally improper. Right. But the show-up wouldn't have come into evidence, I don't think, unless you pursued it into evidence. So you're trying to suppress your own evidence. No, Judge. The government was moving and had acknowledged they were going to introduce that show-up at trial. That was the purpose of the motion to suppress the show-up identification. What the defendant did and pled is not relevant before this court. Federal Rules of Evidence 410A3 prohibits what happens in a plea agreement to be considered by this court when we're talking about at the motion to suppress. So it doesn't matter that the defendant pled guilty. What matters is, is that due process rights violated in this show-up? And my argument on that specific point, I'm talking about the specific show-up identification, that show-ups should not be allowed except in rare circumstances. The Seventh Circuit Court of Appeals... We only have jurisdiction, I think, when we make a conditional plea. And if we agree with you, you go back and get your plea vacated, get your conviction vacated. And the show-up is... So you made a conditional plea. I'm guilty, but it was secured unconstitutionally by the government. Right. The show-up is suppressed. We can take our avenue and try to... But you have to say that if they had the identification at trial, that that would have been unconstitutional. Right. So Judge... We didn't have one, so we don't know whether it is or not. Well, Judge, we have it from the suppression hearing. We have the witness testifying of what he would say at trial. We know what he was going to say. He was under oath. We knew what he was going to say. I asked him point blank if he could identify the defendant. He said, no, but I can identify the clothing, and I identified him by being outside of the police car. And you could impeach him by the fact that you didn't identify him as the person at the previous hearing. You could use that to impeach him, too. But the real question would be whether he could identify him at the trial or not, whether he's the fellow that's sitting there. He can identify him as seeing him at the show-up. When he saw him at the show-up, he identified him at that point. That would be a prior consistent statement or something, or a prior consistent statement, which wouldn't be admissible, I wouldn't think. Judge, I... The question is what he sees in the courtroom. Eyewitness identifications kill defense cases. And if we're going to allow the police in rampantly... The defendant was under arrest when he was subjected to the show-up. They didn't need to do the show-up. Well, maybe they didn't, but I don't know. But it would look to me like it's something you would want to cross-examine him with if he was able to identify your man at the trial. They needed to do the show-up to make sure that they had the right person and that there wasn't somebody... The offender might not still be running around the area. Somebody who had just committed armed robbery and shoved and assaulted a man in the process. Judge Thacker, he was already arrested. He could not be un-arrested. He was arrested. He had to go to the magistrate. A show-up was not necessary. Excuse me, Judge? He could be un-arrested. If a guy walks in and says, that ain't the guy, do you think they're going to carry him downtown? No, Judge. Not under Virginia law. This is a state case. The feds cherry-picked and brought over. But, Judge, under state cases, after you're arrested, you have to be brought to the magistrate. Cherry-picked and brought over. You mean it came from the state court, the federal court, and what they made, the Hobbs Act? Right. Right. But that's a federal case. That's fine. It's a gun. It's a federal prosecution. You negotiated the Hobbs Act. Please. But this was not the FBI. This was the police. They arrested him. You negotiated the Hobbs Act.  I did negotiate the Hobbs Act. In the federal court system. Yes, Sir, Judge. But he had to have gone to the magistrate, no matter what the witness said. Yes, that's him. No, that's him. He could not be un-arrested. Only the magistrate could determine whether or not to issue process at that point. The police can't un-arrest. Not under Virginia law. That's a special Virginia law. I've never heard of a situation where the victim comes in and says, that ain't the guy. The police don't automatically… I have it in my brief. I'm out of time. I'll address that in a rebuttal. Okay, great. Good. May it please the court. The defendant is raising a blanket challenge to show up identifications. And I think it's important to note on the facts of this case that there really wasn't an alternative in the sense of a lineup or a sequential photo display to the victim because of the way that the victim made the identification. The victim made the identification based on the distinctive piping on the black clothing, the black pants, the black shoes, and the mud on it. Showing that victim at the station house later, a series of photographs of pictures of faces would have been useless. And so, the defendant's argument that the show up in this case is unduly suggestive is essentially an argument that you can never have identification evidence from this victim in this particular case. And that is unsupportable under the Supreme Court's and this court's cases. The Supreme Court has long held that, since at least Simmons in 1968, that admission of an eyewitness identification is excludable only if it poses a very substantial likelihood of a reparable misidentification. And if it violates fundamental conceptions of justice is extremely unfair. And it has described exclusion of an eyewitness identification as a draconian sanction. And I think that this case helps underscore why that is so. What we are talking about here is the victim of an armed robbery showing up 42 minutes after the robbery and identifying the person who robbed him with an action that, as later events showed, put him in great peril. And the claim here is that that person is precluded from testifying at court about who robbed him. And that is very strong medicine. Under the two-pronged standard of suggestiveness and reliability, the defendant cannot meet either standard in this case. Under the suggestiveness prong, there's essentially four factors that have been raised, the first two of which are not even police conduct. And so therefore, under Perry decision, don't even count, which is the radio report that the police had apprehended a suspect. In Perry, the Supreme Court said that does not count as police conduct. There's also the second factor is the court relied on the appearance, the clerk relied on the appearance of the shoes and the clothing. That's just a fact about what the clerk saw, not government conduct. So it doesn't count. There's the fact that the identification was made while the defendant was in handcuffs in police custody. Given the flight from the police, that was a very sensible measure to take and the danger of the crime at issue. And the last factor really isn't even a point about suggestiveness, which is that the clerk made the identification from up to 50 feet away, but that doesn't point to a particular person. If anything, that might make the identification harder, but it's not per se suggestive. I think that it was a sensible measure not to have the victim thrust right in the face of the suspect because that would likely be stressful and perhaps even undermine the identification. So I don't think he even makes a case on suggestiveness, and nor can he make a case on reliability. I don't see that the court is having a lot of questions. How is this a conditional police case? Well, it... Do you agree you don't have any evidence to make a promulgation case except the out-of-court identification? That was the only thing you had. You didn't have a case that you could present in court. Well, under this court's opinion in Bundy, I would say that this was essential evidence, which is one way that the court... Why would the government use it? The question is whether the fellow is in the courtroom. And if the witness says that's him, that's the end of the story for the government. Now, if he says, I can't tell, then maybe you can argue about getting in, admitting this, and maybe that was your case. Maybe that you knew that the witness couldn't do it. And then so the only thing we could do was present the circumstances of that evening and hope that that made the case. Right. Well, and... Was that the situation? Yes. What you're... Is that the... I think that there was no way to put on this case without getting into the show-up identification because the... In the government's case in chief. Right. Because the victim was very clear at the suppression hearing that he made the identification based on the appearance of the clothing. He might in court be able to say, well, now that I saw the defendant in court at that suppression hearing, I can say to you, I know what he looks like now and I can make an identification based on that. But his identification at the time of trial would be derivative of later exposure to the defendant. But that would be for the defendant to argue about. That would be for the defendant to cross-examine and even argue about. If he says that's him. Well, I agree, but I think... That makes a prima facie case for the government. Also... I'm the clerk. We were robbed. The guy ran. They marry you. I do think it's very powerful evidence, though, that this was a identification made 42 minutes after crime where the defendant was actually seized 16 minutes after the robbery and then there was this brief delay as the victim got there. That, I think, would be very powerful evidence. How could he possibly identify him sitting in court when his face was covered during the robbery, right? Right. No, I agree with that. I think that the only way he could make an identification in court is to say, later on at that suppression hearing, when the defendant was there and I testified, I got a good look at him at that point and that's the basis on which I would make my identification. I think in that kind of a circumstance, the nature of the original show-up identification would be very much at issue at trial. If it was problematic or excluded, I don't see how our witness could survive in that kind of a circumstance. Was that reflected in the plea agreement or on the record at the plea? The plea agreement just reflects that he preserved this right to appeal the identification issue and we... Constitutionality of the plea. Right, exactly. I think we understand your position. Thank you, Your Honor. If you want to keep talking, I'll be happy to listen. I don't want to take up the court's time unnecessarily. Mr. Anderson, you've got some time remaining. Chief Judge, 192-82 of the Code of Virginia, it's on page 7 of my reply brief to answer the question before I sat down, states a person arrested without a warrant shall be brought forthwith before a magistrate. And there's some other language the court can review. It's not important. But to respond to that, but to Judge King, because that seems to be the bigger fight here, you've heard it. The government couldn't make their case without the show-up identification. That's why this is so critical that this court address that. And what I haven't got to say is this. You can't beat a show-up identification the way it is currently. You can't beat it. I agree. You and the government think we need to address the constitutional issue. He says that if we do it, if we do anything other than rule with him, we'd change all the law in the Fourth Circuit and the Supreme Court of the United States. Well, it could... And rule with you. You can look at the Finches case from the Seventh Circuit. It has some safeguards. Look, if I can make it overly suggestive, which is not a hard standard, I can't beat the inherently unreliable standard. What this court should do is just make it to where police every day have to think, well, we shouldn't do a show-up unless it's absolutely necessary. Is the victim going to die? Is the defendant going to rapidly change his facial appearance? Something like that. There should be a firm safeguard due process procedural rule by this court. It doesn't control the states, but it will certainly be observed, I'm sure, that says do a show-up when absolutely necessary, not just out of convenience. That's just when you need to know whether or not you have the correct person in custody because if you don't, then there is an offender running through a residential neighborhood with a gun that has already assaulted somebody, which is the case here. But he's already been arrested, Judge Thacker. But they need to make sure they have the right person. He's already been arrested. So you're admitting they have the right person. No, but the point is, if the guy says that's not him, the fellow's still running loose. Well, okay. They have to go back out and find him. But then they've already arrested him and they've already got their guy. So you get, just take him to… What if they got the wrong guy? That's the point. Take him to the police station and let a photo… Find the right guy. Well, Judge, in that case, then show-ups should be granted in every case. And the Supreme Court said they should be widely condemned. That's all I have. I note your photo point, Mr. Anderson. We appreciate very much your undertaking. Pleasure to be here, Your Honor. Vigorous, vigorous representation of your… Thank you. All right. We'll ask the clerk to adjourn court and then we'll come down and recounsel. This honorable court stands adjourned. The nays die. God save the United States and this honorable court.
judges: William B. Traxler, Jr., Robert B. King, Stephanie D. Thacker